CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
May 01, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| YALDA RAJABI et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 7:24-cv-494 |
| MARCO RUBIO, in his official ) | |
| capacity as Secretary of State, et al., ) | By:    Michael F. Urbanski |
| ) | Senior United States District Judge |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

This matter is before the court on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), for improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6) filed by defendants Secretary of State Marco Rubio and Acting Director of the Office of Screening, Analysis, and Coordination Robert Jachim.[1] ECF No. 12. Defendants further ask the court to drop misjoined plaintiffs pursuant to Rule 21. Id. Originally, plaintiffs were eighteen F and J category nonimmigrant visa applicants, and now, after many of these plaintiffs voluntarily dismissed their claims, the remaining three plaintiffs are two Iranian nationals and one Afghan national seeking F-1 visas to study at universities in the United States. Compl., ECF No. 1.

---

[1] When this case was filed, the Secretary of State was Anthony J. Blinken. However, Marco Rubio now holds that position. Federal Rule of Civil Procedure 25(d) provides that "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,] . . . [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name . . . . The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d).

1

Plaintiffs seek a writ of mandamus and declaratory and injunctive relief to compel defendants to adjudicate their visa applications, which have been refused and placed in administrative processing for as long as 22 months, without further delay. Id. As to subject matter jurisdiction, defendants argue that the court cannot consider the merits of these claims because no statute or regulation requires defendants to take any further discrete action once a visa application has been refused, leaving the court with no legal action to compel. ECF No. 13. The court agrees. Accordingly, defendants' motion to dismiss is **GRANTED** for lack of subject matter jurisdiction under Rule 12(b)(1).[2]

## STATUTORY AND REGULATORY BACKGROUND

The remaining plaintiffs all seek F-1 visas, which allow their holders to temporarily study in the United States. 8 U.S.C. § 1101(a)(15)(F). To obtain an F visa, the applicant must first gain acceptance to an approved program, signified with a Form I-20. 8 C.F.R. § 214.2(f)(1)(i). The applicant must then file a Nonimmigrant Visa Application—Form DS-160—through the State Department's website. 22 C.F.R. § 41.103(a). Finally, the applicant must attend an in-person interview at a U.S. Embassy or Consulate, 8 U.S.C. § 1202(h)(1), and after the interview, a consular officer "shall determine . . . the proper nonimmigrant classification, if any, of the alien" and the "alien's eligibility to receive a visa," 22 C.F.R. § 41.102(a). The visa applicant bears the burden of establishing eligibility. 8 U.S.C. § 1361.

---

[2] The motion to dismiss was fully briefed, ECF No. 13; ECF No. 16; ECF No. 18, and although a hearing was scheduled, ECF No. 20, the court ultimately decided to "dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process." United States v. Martinez-Melquiades, No. 19-4081, 2022 WL 474169, at *2 (4th Cir. Feb. 16, 2022).

The Immigration and Nationality Act ("INA") requires that nonimmigrant visa applicants "shall furnish to the consular officer, with his application, a certified copy of such documents pertaining to him as may be by regulations required." 8 U.S.C. § 1202(d). In return, the INA states that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." Id. The statute does not provide a clear definition of what it means for a consular officer to have "adjudicated" a visa application.

By regulation, however, a consular officer must, when a visa application has been "properly completed and executed, . . . issue the visa, refuse the visa, or, pursuant to an outstanding order under INA [§] 243(d), discontinue granting the visa." 22 C.F.R. § 41.121(a). The same regulation, 22 C.F.R. § 41.121(a), provides that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [§] 221(g)." Id. INA § 221(g), codified at 8 U.S.C. § 1201(g), is the provision cited in the refusals issued to the plaintiffs in this case. ECF No. 23-1. INA § 221(g) states:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, . . . , that such alien is ineligible to receive a visa or such other documentation under [§] 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under [§] 1182 of this title, or any other provision of law.

8 U.S.C. § 1201(g).

The Foreign Affairs Manual provides further guidance as to the nature of § 221(g) refusals. According to the Manual, "A refusal under INA [§] 221(g) is, legally, a refusal on a

3

visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).[3] A § 221(g) refusal can be "overcome" when the applicant "has presented additional evidence" or "when the case required additional administrative processing, which has been completed." 9 FAM 504.11-4(A)(a).

As for the timing of visa adjudications, the relevant statutes and regulations do not state a precise or mandatory deadline. 22 C.F.R. § 41.106 requires that "[c]onsular officers . . . ensure that the Form DS-160 . . . is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. There is also a general requirement under the Administrative Procedure Act ("APA") that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555.

**FACTUAL BACKGROUND**

When the complaint was filed, plaintiffs were eighteen F and J nonimmigrant visa applicants. Compl., ECF No. 1. Fifteen of the original plaintiffs have since voluntarily dismissed their claims. ECF No. 8; ECF No. 11; ECF No. 21. Thus, the only remaining claims are those of Mohammad Mahdi Dehghan Pir, Mirwais Sakhizada, and Afshar Mahmoudi.

Dehghan Pir is an Iranian national living in Italy. Compl., ECF No. 1, ¶ 84. He is seeking an F-1 visa because he has been admitted to the University of Iowa to pursue a PhD in mechanical engineering. Id. After an interview at the U.S. Consulate General in Naples, Italy

---

[3] The Foreign Affairs Manual is not binding and "lack[s] the force of law." Scales v. Immigration & Naturalization Servs., 232 F.3d 1159, 1166 (9th Cir. 2000) (citations omitted). While this means that the Foreign Affairs Manual cannot be the ultimate source of a legal obligation for defendants to take any particular action on plaintiffs' visa applications, the court may rely on the Manual as one persuasive tool in reading the relevant statutes and regulations and in ascertaining the function of § 221(g) refusals.

4

on July 6, 2023, Dehghan Pir was informed that his visa application was in administrative processing, and he was asked to provide responses to a questionnaire asking for personal background information, such as addresses, employment, travel, and social media handles. Id. ¶¶ 85-87. Although Dehghan Pir responded with the requested information, his visa application remains in administrative processing 21 months later, causing Dehghan Pir financial, educational, and professional harm. Id. ¶¶ 90-92.

Sakhizada is an Afghan national living in Italy. Id. ¶ 93. He is seeking an F-1 visa because has been accepted into the State University of New York College of Environmental Science and Forestry to pursue his PhD in construction engineering. Id. Sakhizada was interviewed at the U.S. Consulate General in Naples, Italy on December 14, 2023, and although he promptly provided requested responses to a questionnaire seeking personal background information, his visa application remains in administrative processing 16 months later. Id. ¶¶ 95-98.

Finally, Mahmoudi is an Iranian national living in Italy seeking an F-1 visa because he has been accepted to the New Jersey Institute of Technology to study biomedical engineering. Id. ¶ 184. Mahmoudi was interviewed at the U.S. Consulate General in Florence, Italy on June 16, 2023, and his application remains in administrative processing 22 months later. Id. ¶¶ 186-91.

Defendant Marco Rubio is the Secretary of State, which means he has supervisory authority over consular officers who are responsible for issuing nonimmigrant visas. Id. ¶ 35. Defendant Robert Jachim is the Acting Director of the Office of Screening, Analysis, and

Coordination, which plaintiffs identify as an entity within the Bureau of Consular Affairs' Visa Service Office within the Department of State. Id. ¶ 36.

Plaintiffs initiated this action by filing a petition for writ of mandamus and a complaint for declaratory and injunctive relief on July 31, 2024. Compl., ECF No. 1. In Count One, pursuant to the APA, 5 U.S.C. § 706(1), plaintiffs ask the court to "compel agency action unlawfully withheld or unreasonably delayed" by ordering the agency to stop "withholding and delaying the adjudication and issuance of Plaintiffs' visa applications." Id. ¶¶ 222-32. In Count Two, plaintiffs allege that defendants have violated the APA, 5 U.S.C. § 555(b), by failing "to conclude" reviewing their visa applications "within a reasonable time." Id. ¶¶ 233-47. In Count Three, pursuant to the APA, 5 U.S.C. § 706(2), plaintiffs allege that defendants have acted in an arbitrary and capricious manner and without observance of procedures required by law by deciding "to use non-final § 221(g) decisions to satisfy their duties to provide final adjudications [as to visa applications], and thus throttle issuance of visas to Iranians." Id. ¶¶ 248-52. Finally, in Count Four, plaintiffs seek to compel defendants to take action on their visa applications under the Mandamus Act, 28 U.S.C. § 1361. Id. ¶¶ 253-64.

Plaintiffs seek declaratory relief stating that they are entitled to prompt adjudication of their visa applications, injunctive relief compelling defendants to complete review of their visa applications within 30 days of the order, and mandamus relief similarly compelling defendants to complete review of their visa applications within 30 days of the issuance of the writ. Id. at Prayer for Relief. Plaintiffs also ask the court to enjoin defendants from any further delay in adjudicating plaintiffs' visa applications, to retain jurisdiction to monitor defendants' compliance, to provide attorney fees and costs, and to "issue contempt sanctions against the

government even if [the court finds] it [can] not grant relief directly to visa applicants." Id. (quotation omitted). Thus, although Count Three stands somewhat apart from plaintiffs' other claims in that it alleges a higher-level design by defendants to "throttle" issuance of visa applications to Iranians, id. at ¶ 249, the relief requested focuses this case on the issue of whether defendants may be compelled to take further action without unreasonable delay on these particular plaintiffs' visa applications, which have all been refused and placed in administrative processing.

In their motion to dismiss filed on December 10, 2024, ECF No. 12, defendants contend that this court lacks jurisdiction to compel such action because defendants are under no legal obligation to take further action on plaintiffs' visa applications, which have already been refused, Mem. Supp. Mot. Dismiss, ECF No. 13. Defendants also argue that venue is improper, that plaintiffs' claims are misjoined, that the doctrine of consular nonreviewability precludes consideration of plaintiffs' claims, that plaintiffs have failed plausibly to allege that the delay in review of their visa applications is unreasonable, and, finally, that Count Three fails to state a claim that defendants have a "policy" to use INA § 221(g) to throttle visa applications from Iranian nationals because Count Three is unsupported by any specific details and fails to acknowledge that federal law requires unique treatment of visa applications from nationals of countries, like Iran, that have been designated as state sponsors of terrorism. Id. at 1-2. However, because the lack of subject matter jurisdiction resolves this case, this opinion will not address venue or the substance of plaintiffs' claims.

## STANDARD OF REVIEW

"Generally, a court must resolve jurisdictional issues before considering the merits of a claim, because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" Whitaker v. Monroe Staffing Servs., LLC, 42 F.4th 200, 206 (4th Cir. 2022) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)); see also Zadeh v. Blinken, No. 23-cv-3721, 2024 WL 2708324, at *4 (N.D. Ill. May 20, 2024) ("Subject matter jurisdiction always comes first."). Although courts are permitted to resolve certain threshold issues unrelated to the merits, like forum non conveniens, prior to assuring themselves of jurisdiction where doing so serves judicial economy, the Fourth Circuit has concluded that district courts should assure themselves of jurisdiction before making decisions related to transfer of venue that do touch upon the merits. Whitaker, 42 F.4th at 208 (determining that the district court should have decided jurisdiction before considering whether to transfer venue based on a forum selection clause). Moreover, the Supreme Court has noted, "If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground," rather than address threshold issues unnecessarily. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 436 (2007) (noting that judicial economy will favor this course in the "mine run of cases," where jurisdiction can be assessed without extensive factual development). Accordingly, this opinion will evaluate defendants' motion under Rule 12(b)(1), rather than first considering the possibility of dismissing or transferring venue under Rule 12(b)(3).

The party asserting federal jurisdiction bears the burden to prove that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945

F.2d 765, 768 (4th Cir. 1991); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). "Subject-matter jurisdiction may be challenged as a facial or factual attack." Hannah v. United States, No. 7:20-cv-662, 2022 WL 135314, at *2 (W.D. Va. Jan. 13, 2022) (citing Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 621 n.7 (4th Cir. 2018)). In a facial challenge, a defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Wells v. Artrip, No. 1:16-cv-041, 2017 WL 1788385, at *2 (W.D. Va. May 3, 2017). In a factual challenge, a defendant may argue "that the jurisdictional allegations of the complaint [are] not true." Id.

## DISCUSSION

Judicial review of agency inaction is limited under both the APA and the Mandamus Act. As the Supreme Court held in Norton v. Southern Utah Wilderness Alliance, APA § 706(1) claims asking a court to "compel agency action unlawfully withheld or unreasonably delayed" may "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004). The Fourth Circuit has framed Norton's prohibition on judicial review of APA § 706(1) claims of agency action unlawfully withheld or unreasonably delayed absent discrete, required agency action as part of APA § 701(a)(2)'s preclusion of judicial review of "agency action . . . committed to agency discretion by law." Lovo v. Miller, 107 F.4th 199, 211 (4th Cir. 2024). The Fourth Circuit treats the absence of discrete, required agency action as jurisdictional, not merely as an issue of the plaintiff failing to state a meritorious APA § 706(1) claim. See id. at 216 (affirming dismissal for lack of subject matter jurisdiction where the plaintiffs' APA claim was not based on a

9

discrete legal requirement); Gonzalez v. Cuccinelli, 985 F.3d 357, 365-66 (4th Cir. 2021) (characterizing Norton's holding as jurisdictional); NAACP v. Bureau of the Census, 945 F.3d 183, 191 (4th Cir. 2019) (finding that a plaintiff's failure to identify agency action eligible for judicial review under the APA is a "jurisdictional defect").[4]

The Mandamus Act similarly "only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." Lovo, 107 F.4th at 216 (citing 28 U.S.C. § 1361). Indeed, the Supreme Court's conclusion in Norton that "the only agency action that can be compelled under the APA is action legally *required*" derives from the traditional mandamus remedy, which was historically "limited to enforcement of a specific unequivocal command, the ordering of a precise definite act . . . about which [an official] had no discretion whatever." 542 U.S. at 63 (citations omitted). Thus, mandamus relief is only available where the agency has a "clear duty to act," and as was the case under the APA, such a clear duty is a "threshold requirement[]" under the Mandamus Act that is "jurisdictional; unless [it is] met, a court must dismiss the case for lack of jurisdiction." Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016).

In assessing whether a clear duty or a discrete, required agency action exists, courts look for a "clear indication of binding commitment," Norton, 542 U.S. at 69, in "the text of

---

[4] Some courts have treated the question of whether further adjudication of a visa application beyond issuance of a § 221(g) refusal is a discrete, required agency action as a merits issue to be addressed under Rule 12(b)(6). See, e.g., Sheikhalizadehjahed v. Gaudiosi, No. 2:24-cv-1136, 2024 WL 4505648, at *2-8 (E.D. Cal. Oct. 16, 2024); Khazaei, 2023 WL 6065095, at *5; Rezaeirad v. Blinken, No. 23-1182, 2024 WL 3792537, at *4 (D.D.C. Aug. 12, 2024). However, under Fourth Circuit precedent, the issue is plainly jurisdictional and must be addressed under Rule 12(b)(1). See, e.g., Farahani v. Laitinen, No. 1:23-cv-922, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025); Berenjian v. Blinken, No. 1:24-cv-663, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024). Many courts in other circuits have also treated the issue as jurisdictional. See, e.g., Ahmed v. Blinken, No. 24-153, 2024 WL 4903771, at *4-5 (D.D.C. Nov. 27, 2024); Fakhimi v. Dep't of State, No. 23-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023).

10

the relevant statutes and regulations," Lovo, 107 F.4th at 211. "[T]he presence of 'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command required . . . to hold that an agency is compelled to act." Id. (citing Gonzalez, 985 F.3d at 366-71). However, "the impact of seemingly mandatory or permissive language depends heavily on the context in which it appears." Id. at 212.

Here, several statutory and regulatory provisions use mandatory language in obligating defendants to take action on visa applications. The INA requires that "all nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d) (emphasis added). This provision constitutes a requirement that consular officers review and adjudicate visa applications. Lovo, 107 F.4th at 211. However, the INA does not clarify what discrete action satisfies the requirement that an application be "reviewed and adjudicated." 8 U.S.C. § 1202(d).

Regulations fill in the picture. 22 C.F.R. § 41.121(a) requires that, when a visa application has been executed, "the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a) (emphasis added). This mandatory language establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications by issuing, refusing, or discontinuing granting visas. Importantly for this case, this language explicitly makes refusal of a visa one way in which consular officers may discharge their mandatory duties. The text of 22 C.F.R. § 41.121(a) specifically provides that a § 221(g) refusal constitutes a qualifying refusal, stating that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [§] 221(g)." The Foreign Affairs Manual further clarifies, "A

11

refusal under INA [§] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).

Thus, although there is discrete, required agency action that defendants in this case must take in that they must review and adjudicate visa applications by issuing visas, refusing visas, or discontinuing granting visas, defendants here have already taken the discrete action required of them by issuing § 221(g) refusals. After a refusal, such as a § 221(g) refusal, has been issued, there is no further discrete action consular officers must take to satisfy their obligations under the INA, 22 C.F.R. § 41.121(a), or any other pertinent statute or regulation.

Many courts have reached the same conclusion, including many in the Fourth Circuit. See, e.g., Farahani v. Laitinen, No. 1:23-cv-922, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025) ("The consular officer in this case . . . discharged the discrete, non-discretionary duty to adjudicate the visa applications of Dr. Farahani's family by informing them that the applications had been refused and were being placed in administrative processing."); Turner v. Blinken, No. 24-318, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) (collecting cases in this circuit and deciding "[p]laintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal . . . pursuant to § 221(g)"); see also Ramizi v. Blinken, No. 5:23-cv-730, 2024 WL 3875041, at *10 (E.D.N.C. Aug. 14, 2024) (concluding that the defendants had "discharged their nondiscretionary duty to adjudicate [the plaintiff's] visa application" by issuing a refusal pending administrative processing); Berenjian, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024) (holding that "[t]his [§ 221(g)] refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the

12

district court of subject matter jurisdiction); Ameen v. U.S. Dep't of State, No. 1:23-cv-01391, 2024 WL 3416264, at *3 (E.D. Va. July 15, 2024) ("Ameen does not raise any mandatory procedures which Defendants failed to follow" because "an initial refusal followed by further inquiry is consistent with visa statute and regulations."); Tesfaye v. Blinken, No. 22-411, 2022 WL 4534863, at *5 (D.D.C. Sept. 28, 2022) ("Plaintiffs themselves indicate that after their interview, their applications were 'refused' under INA § 221(g)—in other words that the consular officer took the precise action directed by the regulation."); Esghai v. U.S. Dep't of State, No. 24-cv-2993, 2024 WL 4753799, at *6 (S.D.N.Y. Nov. 12, 2024) ("Esghai's APA claim fails because the State Department has taken action here: It refused Zojaji's application, and there is no legal basis for Esghai's bid to compel further action on the already-refused application.").

The D.C. Circuit's reasoning in Karimova v. Abate is instructive. There, albeit in an unpublished opinion, the D.C. Circuit determined that where a visa application "was considered by the consular officer and officially refused," consular officers have no further duty "after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." No. 23-5178, 2024 WL 3517852, at *2-4 (D.C. Cir. July 24, 2024). The court explained that "keeping the door open in administrative processing" does not mean that a visa application has not been "officially refused." Id.

Courts that have reached the opposite conclusion have frequently based their decisions on the finding that § 221(g) refusals are not final. See, e.g., Ebrahimi v. Blinken, No. 23-c-3867, 2024 WL 2020038, at *5-8 (N.D. Ill. May 3, 2024) (finding that the adjudication of a

13

visa application was not complete where the applicant remained in administrative processing); Khazaei v. Blinken, No. 23-1419, 2023 WL 6065095, at *5 (D.D.C. Sept. 18, 2023) (finding that "because the Department's evaluation of Plaintiffs' visa applications is ongoing," the court could review applicants' unreasonable delay claims); Sheikhalizadehjahed, 2024 WL 4505648, at *7 ("The initial refusal of Plaintiff's father's visa application while placing it in 'administrative processing' does not dispense with [the] duty [to adjudicate visa applications] because there has been no final adjudication."); Hassan v. Dillard, No. 24-cv-1351, 2024 WL 4979476, at *5 (D. Minn. Dec. 4, 2024) ("[T]his Court is not persuaded . . . that a consular officer's purported 'refusal' of a visa application operates as a final agency decision that concludes the agency's legal obligation to adjudicate the application when the officer places the application in administrative processing."). This court agrees that § 221(g) refusals are not final in many cases. The plaintiffs' stories here attest to this reality. While some visa applicants may remain in administrative processing, others, like the fifteen plaintiffs who voluntarily dismissed their claims in this case, are eventually issued visas or final refusals. Opp'n, ECF No. 16 at 15 n.1. Indeed, the Foreign Affairs Manual confirms that a § 221(g) refusal can be "overcome" when the applicant "has presented additional evidence" or "when the case required additional administrative processing, which has been completed." 9 FAM 504.11-4(A)(a).

However, this court parts ways with those that have determined that it is inherently significant that § 221(g) refusals are not final because this court concludes that there is no mandatory duty under the INA or its implementing regulations requiring consular officers to reach a more definitive decision on a visa application that has already been refused. In

14

Yaghoubnezhad v. Stufft, an opinion out of the District of Columbia, the court concluded that the fact that an application has been refused under § 221(g) to allow for administrative processing "is of little relevance since nothing in § 41.121 provides a 'specific, unequivocal command' for State to issue a final, unreviewable decision." 734 F. Supp. 3d 87, 102 (D.D.C. 2024) (quoting Norton, 542 U.S. at 63). "Conspicuously absent from [22 C.F.R. § 41.121(a)] is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" Id. at 101; see also Ramizi, 2024 WL 3875041, at *10 ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."); Farahani, 2025 WL 360833, at *4 (same). The absence of any finality requirement in 22 C.F.R. § 41.121(a) is telling because while the INA contains the general directive that visa applications "shall be reviewed and adjudicated," 8 U.S.C. § 1202(d), it is 22 C.F.R. § 41.121(a) that contains the discrete requirement that visa applications "must" be issued or refused, 22 C.F.R. § 41.121(a). By refusing the visa applications, defendants here have already taken this discrete, required agency action, and plaintiffs have not pointed to any alternative statute or regulation that might provide a "clear indication of binding commitment" to take additional action resulting in a conclusive, unreviewable determination. Norton, 542 U.S. at 69.

The other statutory and regulatory grounds on which some courts have relied in identifying discrete, required agency action post-§ 221(g) refusal are inapposite. Courts outside the Fourth Circuit have occasionally cited APA § 555(b)'s general requirement that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), to find that consular officers are required to resolve administrative processing within a reasonable time. Fakhimi, 2023 WL 6976073, at *6 (citing Mashpee Wampanoag Tribal

15

Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003)) (concluding that a determination on a visa application is discrete agency action "required by both the APA and the Department's own regulation, and is to be done within a reasonable time"); Sheikhalizadehjahed, 2024 WL 4505648, at *7 ("[E]ven if the Court were to conclude that [INA] § 1202(b) does not impose a nondiscretionary duty to render a final adjudication in a visa application, § 555(b) of the APA independently creates a non-discretionary duty to do so."). And indeed, plaintiffs here rely on APA § 555(b) as the basis for their claim in Count Two. Compl., ECF No. 1, ¶¶ 233-47. However, Fourth Circuit precedent forecloses applying APA § 555(b) in this case. "[T]he Fourth Circuit has determined that [the] broad language [in APA § 555(b)] is not sufficient to create the discrete, non-discretionary duty required to enable judicial review of agency inaction under APA § 706(1)." Turner, 2024 WL 4957178, at *5 (citing Gonzalez, 985 F.3d at 365-66); see also Farahani, 2025 WL 360833, at *4 (explaining that the Fourth Circuit's analyses in Gonzalez, 985 F.3d 357, and Lovo, 107 F.4th 199, necessitate looking to the INA and its implementing regulations rather than to the general provisions of the APA to identify discrete, required agency action in the sphere of immigration law). In Karimova, the D.C. Circuit similarly concluded that APA § 555(b) provides only a "non-specific directive to all agencies" to resolve matters within a reasonable time, not a specific, nondiscretionary duty to promptly adjudicate visa applications. 2024 WL 3517852, at *3.[5]

---

[5] Plaintiffs here do cite one other statutory provision, 8 U.S.C. § 1571. Opp'n, ECF No. 16 at 44. However, that provision is merely a statement of policy recommending that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571. This plainly non-mandatory language cannot be the source of a discrete, required agency action or mandatory duty. Lovo, 107 F.4th at 211.

16

Other courts have cited 22 C.F.R. § 41.106 in finding that "[g]ranting or refusing a final visa application is a mandatory agency action." Vulupala v. Barr, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). However, like 22 C.F.R. § 41.121(a), 22 C.F.R. § 41.106 contains no finality requirement. All that regulation states is that "[c]onsular officers must ensure that the Form DS-160 or, alternatively, Form DS-156 is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. Once a visa application has been refused in accordance with § 221(g), it has been "processed in accordance with the applicable regulations and instructions," 22 C.F.R. § 41.106, namely, in accordance with 22 C.F.R. § 41.121(a). Accordingly, 22 C.F.R. § 41.106 is as unavailing as APA § 555(b) as a possible ground for an unreasonable delay claim where a visa application has been refused under § 221(g).

Finally, plaintiffs here cite 22 C.F.R. § 42.81(e). Compl., ECF No. 1, ¶ 60. That provision has not yet played a significant role in cases on this issue, although it was cited recently in Aramnahad v. Rubio, No. 24-cv-1817, 2025 WL 973483, at *8 (D.D.C. Mar. 31, 2025). 22 C.F.R. § 42.81(e) states, "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). In Aramnahad, the court concluded that this provision, "[w]hen read in conjunction with [§] 555(b) of the APA" and 22 C.F.R. § 42.81(a), provides the government "a clear duty to adjudicate visa applications within a reasonable time." Aramnahad, 2025 WL 973483, at *8 (quotation omitted). For the reasons already explained, neither APA § 555(b) nor 22 C.F.R. § 42.81(a) can be relied upon to create a discrete requirement for further agency action in this

17

case. Standing alone, 22 C.F.R. § 42.81(e) is only a mandatory requirement for reconsideration when an applicant has adduced evidence "tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e). Here, no allegations or evidence indicate whether this precondition has been satisfied. See Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768 (explaining that the party asserting federal jurisdiction, here, plaintiffs, bears the burden to prove subject matter jurisdiction exists). Indeed, plaintiffs have not alleged as to one of the remaining plaintiffs, Mahmoudi, that he submitted any supplemental information following his consular interview. Id. ¶¶ 184-91. And although plaintiffs allege that the other two remaining plaintiffs did submit requested information following their interviews, there is no way for the court to know whether the information plaintiffs submitted overcame any reason for ineligibility previously considered by consular officers. Furthermore, even if a requirement for reconsideration applied, 22 C.F.R. § 42.81(e) does not state the timeline on which reconsideration is to occur.[6]

Plaintiffs' position that consular officers ought to reach final visa eligibility determinations has intuitive appeal. However, the test for identifying discrete, required agency action under Norton and Lovo looks to "the text of the relevant statutes and regulations," not

---

[6] In addition to the INA, APA § 555(b), 22 C.F.R. § 41.106, and the provisions of 22 C.F.R. § 42.81, several provisions of the Foreign Affairs Manual are cited in plaintiffs' complaint as possible grounds for a mandatory duty. Compl., ECF No. 1, ¶¶ 52-63. However, the Foreign Affairs Manual lacks the force of law, Scales, 232 F.3d at 1166, and the provisions cited simply reiterate that consular officers must "'either issue the visa or refuse it.'" Id. ¶ 57 (citing 9 FAM 403.7-3); see also 9 FAM 403.10-2(A) ("A nonimmigrant visa (NIV) must be issued or refused in all cases once an application is executed."). Here, consular officers have complied with this directive by refusing plaintiffs' visa applications under § 221(g). The Foreign Affairs Manual further directs that consular officers "'cannot temporarily refuse, suspend, or hold the visa for future action.'" Compl., ECF No. 1, ¶ 57 (citing 9 FAM 403.7-3). However, § 221(g) refusals plainly qualify as refusals satisfying the requirement to either issue or refuse the visa, and are not impermissible temporary refusals or suspensions, in light of both 22 C.F.R. § 41.121(a), which states that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [§] 221(g)," and the Foreign Affairs Manual itself, 9 FAM 302.1-8(B)(c), which states that "[a] refusal under INA [§] 221(g) is, legally, a refusal on a visa application."

18

to policy. Lovo, 107 F.4th at 211. Where neither Congress nor the agency itself has set forth standards requiring the agency to act, it is not the province of the federal courts to compel agency action. Lovo, 107 F.4th at 216 ("[B]ecause neither Congress nor USCIS itself has ever bound USCIS to adjudicate these applications, the federal courts lack jurisdiction to consider Plaintiffs' APA claim."). As the Fourth Circuit put it in Gonzalez, "[W]here an agency is not required to do something, we cannot compel the agency to act—let alone to act faster." 985 F.3d at 366. Thus, the court lacks jurisdiction over plaintiffs' claims because defendants have already satisfied their mandatory duties under the INA and implementing regulations by issuing § 221(g) refusals, and there is no further discrete, required agency action that the court could compel defendants to take.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

An appropriate order will be entered.

Entered: April 29, 2025

Michael F. Urbanski
Senior United States District Judge